

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | |
|---|---|
| STATE OF MISSOURI, | ) ED99942 |
| | ) |
| Respondent, | ) Appeal from the Circuit Court |
| | ) of the City of St. Louis |
| v. | ) 1122-CR02010-01 |
| | ) |
| ELEX L. MURPHY, | ) Honorable Thomas J. Frawley |
| | ) |
| Appellant. | ) Filed: September 30, 2014 |

## Introduction

Elex Murphy (Defendant) appeals the judgment entered upon his conviction after a jury found him guilty of murder in the second degree, assault in the first degree, and two counts of armed criminal action. Defendant raises the question of whether a hand or a fist can qualify as a "dangerous instrument" in support of a conviction for the unclassified felony of armed criminal action; the same question we consider in another case decided today, State v. Evans, ED100110. Defendant also argues the court clearly erred in denying his challenges to the State's peremptory strikes of African-American venirepersons as racially motivated under Batson v. Kentucky, 476 U.S. 86 (1986). We affirm in part and reverse in part.

## Background

The evidence at trial, in the light most favorable to the verdict, was the following. On the morning of April 16, 2011, Yen Nguyen (Nguyen) and her husband, Hoang Nguyen (Victim), were walking home from a Vietnamese grocery store. Victim was 72 years old and Nguyen was 59 years old at the time. Victim and Nguyen were walking through an alley hand-in-hand, pulling a cart containing their groceries. Nguyen saw four people, two males and two females, walking toward them. Victim moved in front of Nguyen to make way for the four people to pass in the alley.

As the four people came closer, Defendant reached out and grabbed Victim's shirt. Defendant hit Victim in the head, and Victim fell to the ground. Nguyen began to scream, and Defendant came over to her and hit her in her right eye. Nguyen's glasses were knocked off of her face, and she was not able to see through her right eye. She tried to call for her husband to help her, but he was not responding. She went over to him to try and wake him, but he wasn't moving and had blood all over his face.

An ambulance arrived and took Victim first to the hospital. Nguyen followed in a second ambulance. Nguyen had a broken bone and received three stitches near her right eye. At some point, Nguyen was taken in a wheelchair to see her husband. He died shortly thereafter, while she was in the room with him. Victim had a three-inch bruise on the side of his head. The injury to his head caused his brain to swell, which created pressure on his skull and led to his death.

On April 17, 2011, Nguyen identified Defendant in a photographic lineup, administered by Detective Heather Sabin. Detective Sabin also arranged a live lineup two days later, but Nguyen was unable to participate because her glasses had not been

2

repaired. Detective Sabin took a photograph of the men during the live lineup and later showed it to Nguyen. Nguyen also identified Defendant in this photograph. Detective Sabin noticed that Defendant's knuckles were swollen when he was there for the lineup.

After police arrested Defendant, he shared a jail cell for a period of time with a man named Mark Moore (Moore). Defendant introduced himself to Moore as "Knockout." Defendant asked Moore if he had heard about someone "getting knocked out" in South St. Louis, and Defendant told Moore "that was me." Defendant later told Moore that Defendant and his friends were hanging out by a laundromat near the scene of the attack, and his friends were making fun of him because he had hit someone without knocking that person out. Defendant told his friends he was going to knock out the next person he saw. Defendant told Moore that the next people who walked by were an elderly couple pulling a grocery cart. Defendant said he hit the man and knocked him out, and the woman started screaming so he punched her too. Moore also testified about "the knockout game." He said that the game consisted of looking for someone to punch and trying to knock that person out with one punch.

The jury found Defendant guilty of murder in the second degree and armed criminal action against Victim, and of assault in the first degree and armed criminal action against Nguyen. The trial court sentenced Defendant to life imprisonment for the conviction of second-degree murder and 15 years concurrent for armed criminal action. The trial court sentenced Defendant to concurrent terms of 25 years for assault and 12 years for armed criminal action on the remaining counts. Defendant's life sentence for murder and 25 years for assault were to be served consecutively. This appeal follows.

3

<u>Discussion</u>

Defendant raises two points on appeal. First, he argues that the trial court erred in denying his motion for acquittal of the charges of armed criminal action, because the only evidence was that he hit Victim and Nguyen with his fists, and a fist cannot be considered a "dangerous instrument" under the statutory definition. Second, Defendant argues that the trial court erred in denying his <u>Batson</u> challenges to the State's peremptory strikes of two African-American venirepersons.

<u>Standard of Review</u>

In Point I, Defendant challenges the sufficiency of the evidence to support his convictions for armed criminal action, but in doing so he makes a legal argument that rests on statutory interpretation. Statutory interpretation is a legal question that we review *de novo*. <u>South Metropolitan Fire Protection Dist. v. City of Lee's Summit</u>, 278 S.W.3d 659, 666 (Mo. banc 2009). Next, we examine the whole record in light of our interpretation, to determine "whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt." <u>State v. Nash</u>, 339 S.W.3d 500, 509 (Mo. banc 2011).

Regarding Point II, we review a trial court ruling on a <u>Batson</u> challenge for clear error. <u>State v. McFadden</u>, 191 S.W.3d 648, 651 (Mo. banc 2006). "A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." <u>Id.</u>

<u>Point I</u>

Defendant raises the same legal argument here that we considered in another case handed down today, <u>State v. Evans</u>, ED100110. Defendant argues that because his

4

convictions for armed criminal action required a finding that he used a "dangerous instrument" to commit the associated felonies, and because there was no evidence that he used anything other than his fists to commit the felonies, there was insufficient evidence to find him guilty. He argues this is because a fist does not fall under the statutory definition of "dangerous instrument." We agree.

Section 571.015.1[1] provides that a person is guilty of the felony of armed criminal action when that person commits another felony "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Defendant was charged with using a dangerous instrument to attack Victim and Nguyen; specifically, his fists.

"Dangerous instrument" is defined in Section 556.061(9):

> [A]ny instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]

In State v. Evans, ED100110, we determined that the plain meaning of the words "instrument, article or substance" does not include a part of a person's body. Such an interpretation is consistent with the historical intent and use of the armed criminal action statute, and it is consistent with other cases from this Court applying the term "dangerous instrument." See, e.g., Seiter v. State, 719 S.W.2d 141, 143-44 (Mo. App. E.D. 1986) (finding in context of first-degree assault statute that though "fists may be a force likely to produce death or great bodily harm, . . . this is not the same as classifying hands as dangerous instruments").

Therefore, because the evidence here showed that Defendant hit Victim and Nguyen with his fists alone, the jury could not have found that Defendant committed the felonies of murder and assault through the use of a "dangerous instrument." Thus, there

---

[1] All statutory references are to RSMo. (Supp. 2013) unless otherwise indicated.

5

is insufficient evidence in the record for the jury to find him guilty of armed criminal action. Point granted.

## Point II

Defendant argues in Point two that the trial court clearly erred in denying his Batson challenges to the State's peremptory strikes of two African-American venirepersons because the record refutes the State's proffered reasons for the strikes. We disagree.

Under Batson, peremptorily striking venirepersons for no other reason than their race violates a defendant's right to equal protection under the law. 476 U.S. at 89. In order to make a proper Batson challenge, a defendant must make a *prima facie* showing of purposeful discrimination; namely, that the defendant belongs to a cognizable race and that the prosecutor exercised peremptory strikes to remove members of the defendant's race from the jury. State v. Parker, 836 S.W.2d 930, 933-34 (Mo. banc 1992).

It is then for the State to rebut the *prima facie* case by offering a race-neutral explanation for the strike. Id. at 934. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. . . . [D]isparate impact alone will not convert a facially race-neutral explanation into a *per se* violation of equal protection." Id. (citing Hernandez v. New York, 500 U.S. 352 (1991)).

Finally, the defendant then bears the burden to show that the State's proffered race-neutral reasons are merely pretextual justifications for underlying discrimination. Id.; State v. Washington, 288 S.W.3d 312, 315 (Mo. App. E.D. 2009). A crucial, though not dispositive, factor in determining pretext is "the existence of similarly situated white jurors who were not struck." State v. Marlowe, 89 S.W.3d 464, 469 (Mo. banc 2002)

6

(quoting Parker, 836 S.W.2d at 940). Other factors include the "degree of logical relevance between the proffered explanation and the case to be tried," the prosecutor's credibility based on his or her conduct during *voir dire* and "the court's past experiences with the prosecutor," and "the demeanor of the excluded venirepersons." Marlowe, 89 S.W.3d at 469-70 (quoting Parker, 836 S.W.2d at 940). The trial court must consider the totality of the circumstances in determining pretext, and we give considerable deference to the trial court's determination in light of its factual and subjective nature. See Marlowe, 89 S.W.3d at 469-70; Parker, 836 S.W.2d at 934.

Here, all four African-American venirepersons were struck from the jury,[2] and Defendant raised Batson challenges to three of the State's peremptory strikes of African-American venirepersons. Defendant argues the fact that no African-American jurors remained indicates purposeful discrimination. State v. Bateman, 318 S.W.3d 681, 691 (Mo. banc 2010) ("disproportionate number of strikes against other minority venirepersons [and] the number of minority venirepersons remaining after peremptory strikes . . . is significant"). This is one factor to consider in the totality of the circumstances. Defendant appeals the court's denial of his Batson challenges as it relates to two venirepersons. We discuss each in turn.

### Venireperson Turner

The State's proffered reason for striking Venireperson Turner was that when the prosecutor asked the panel whether they had any prior convictions, Venireperson Turner did not answer that he had been convicted of a misdemeanor, though he had indicated it on his information form. The prosecutor said that when she asked Venireperson Turner

---

[2] Three were peremptory strikes, but it is unclear whether the State struck the fourth African-American venireperson peremptorily or moved to strike that venireperson for cause.

7

directly about this, he did admit his conviction, but he did not offer the information prior to that. The trial court found this reason was not pretextual. Defense counsel pointed out that there was a white juror who also did not disclose a prior conviction, but the prosecutor did not confront that juror during voir dire. The prosecutor acknowledged this and apologized. The prosecutor added that Venireperson Turner had told the court he had a medical condition that would require him to go to the restroom frequently. The court also recalled this. The trial court denied the Batson challenge.

Defendant argues that the trial court clearly erred, because the State's reasons were pretextual. Defendant first argues that the presence of a similarly situated white venireperson who was not struck, which the State conceded, should have ended the inquiry and prompted the trial court to prohibit the State from striking venireperson Turner. The presence of a similarly situated venireperson, while relevant, is not dispositive. State v. Murray, 428 S.W.3d 705, 711 (Mo. App. E.D. 2014). The State apologized for overlooking the other juror and acknowledged it was too late to follow up with that juror. The trial court seemed to regard the prosecutor as credible, noting in its evaluation of a later Batson challenge that the trial court "ha[d] no reason to believe based on [its] prior experiences with [the prosecutor] that she is not telling [the court] the truth."

Moreover, the State offered another reason for striking Venireperson Turner, which was the State's concern regarding his medical condition that might require him to use the restroom frequently. Cf. Cartwright v. State, 962 N.E.2d 1217, 1223 (Ind. 2012) (finding that need to urinate frequently was race-neutral reason for strike). Defendant concedes this explanation had some basis in fact, but argues it was not a reasonable

8

concern of the State. The trial court itself had made a note of this potential medical issue as well and seemed to base the decision in part on the court's own recollection of the medical condition. The State also noted that the one other venireperson who had raised a medical concern had been struck by consent.[3] Even if some of the State's reasons were more compelling than others, considering the totality of the circumstances, we cannot say the trial court clearly erred in denying Defendant's <u>Batson</u> challenge regarding Venireperson Turner. <u>See</u> <u>State v. Strong</u>, 142 S.W.3d 702, 714 (Mo. banc 2004) (though some justifications for strike were stronger than others, totality of circumstances established that trial court did not clearly err in denying <u>Batson</u> challenge); <u>see also</u> <u>Rice v. Collins</u>, 546 U.S. 333, 340-42 (2006) (finding no reversible error where prosecutor, after unsuccessfully seeking to strike venireperson based on gender, stated that venireperson was rolling her eyes and did not take process seriously; trial court was in best position to judge prosecutor's credibility).

<u>Venireperson Wells</u>

The State's reason for striking Venireperson Wells was that in response to the trial court's questions, before the attorneys began voir dire, Venireperson Wells asked if she could leave early to take her daughter to school. Venireperson Wells believed she could make arrangements for rides for her daughter later in the week, but she had not made other arrangements for the first day of jury service. The prosecutor noted that several other venirepersons mentioned they had conflicts later in the week, but they had at least rearranged plans to be present for the first full day of jury service. Defense counsel argued in general that there were several other venirepersons who had time commitments, and specifically that one other venireperson was similarly situated.

---

[3] Venireperson Turner's medical condition itself may have supported a strike for cause.

9

However, the court noted that particular venireperson had been struck by consent for other reasons. The trial court concluded that the State's reason for striking Venireperson Wells was not pretextual.

Defendant argues that the trial court clearly erred in denying Defendant's Batson challenge to the strike of Venireperson Wells because there were several other venirepersons who had scheduling conflicts, and Venireperson Wells never indicated that she would not be able to serve on the jury despite her desire to leave early that day to drive her daughter to school. The State points out that all other venirepersons who had scheduling conflicts were struck from the jury, either for cause or peremptorily. Six were struck by consent of both attorneys, and one by the trial court upon the prosecutor's motion. One venireperson stated she could move her work conflict later in the week, and she ultimately was selected as an alternate juror, whom the court dismissed prior to deliberation. The other two, Venireperson Wells and Venireperson Smith, were struck by the State using peremptory strikes. The record does not contain Venireperson Smith's race.

Though the State's removal of Venireperson Wells contributed in part to the removal of all remaining African-American venirepersons, the fact that the State sought to remove all venirepersons who had a scheduling conflict is evidence of race-neutral reasoning. See State v. McCrary, 963 S.W.2d 674, 677-78 (Mo. App. W.D. 1998) (removal of all venirepersons who said they would have trouble with non-facial identification was not discriminatory, even though result was removal of all African-Americans from jury). Moreover, the implication that Venireperson Wells came to the first day of jury service with the expectation that she would leave *voir dire* early can be

10

seen as a failure to take the duties of jury service seriously. Cf. State v. McFadden, 191 S.W.3d 648, 660 (Mo. banc 2006) (noting one race-neutral reason for strike was that venireperson was visibly distracted and not taking *voir dire* process seriously). Considering the totality of the circumstances, we do not find that the trial court clearly erred in denying Defendant's challenge to the State's strike of Venireperson Wells. See Marlowe, 89 S.W.3d at 469-70. Point denied.

## Conclusion

Because there was no evidence that Defendant used anything other than his fists in attacking Victim and Nguyen, the evidence was insufficient to support his convictions for armed criminal action. However, Defendant has not shown the trial court clearly erred in its determination of Defendant's Batson challenges. Thus, we vacate Defendant's two convictions of armed criminal action and accompanying sentences; in all other respects, the judgment is affirmed.

_____
Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Robert G. Dowd, Jr., J., concurs.

11