

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| RYAN PATTERSON, | ) | No. ED101357 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| vs. | ) | |
| | ) | Hon. William L. Syler |
| STATE OF MISSOURI, | ) | |
| | ) | Filed: |
| Respondent. | ) | June 30, 2015 |

Ryan Patterson ("Movant") appeals the motion court's denial of his Rule 29.15 motion for post-conviction relief. Movant argues the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because: (1) Movant's appellate counsel was ineffective for failing to raise a <u>Batson v. Kentucky</u>[1] claim; (2) Movant's appellate counsel was ineffective for failing to raise a claim about the trial court's error in sustaining the State's objections to Movant's motion to cross-examine the State's witness Michelle Lawrence about a polygraph test she took that came back inconclusive; and (3) Movant's trial counsel was ineffective for consenting to a jury being picked from Pemiscot County. We affirm.

Movant lived with his girlfriend, Michelle Lawrence, who was in the process of divorcing John Lawrence. John Lawrence lived with his girlfriend, Jamie Orman, who was seven months pregnant. Jamie Orman also had three children with her ex-husband who were present on the night of the incident, Derrick Orman, Jacob Orman, and Travis Orman.

Movant and Michelle Lawrence plotted to kill John Lawrence before the divorce was final so that Michelle Lawrence could obtain the proceeds of John Lawrence's insurance

---

[1] 476 U.S. 86 (1986).

policies. Movant enlisted the help of Samuel Hughes ("Ray Ray") on the night of the incident. Movant planned to kill John Lawrence and then burn his house down.

Movant and Ray Ray went to John Lawrence's house and broke in through the back door at around 5:00 a.m. Movant shot Derrick Orman and Jamie Orman. Both Derrick Orman and Jamie Orman died from their gunshot wounds. Jamie Orman's seven month old fetus died from lack of oxygen due to Jamie Orman's death. Jacob Orman and Travis Orman were not injured.

Movant was charged with three counts of first-degree murder. Movant was convicted by a jury of three counts of first-degree murder, Section 569.020.[2] Movant was sentenced to three consecutive terms of life imprisonment without the possibility of parole. Movant's convictions were affirmed on direct appeal. State v. Patterson, 382 S.W.3d 262 (Mo. App. E.D. 2012).

Thereafter, Movant filed a pro se Rule 29.15 motion for post-conviction relief. Counsel was subsequently appointed and an amended motion was filed. The motion court denied Movant's motion for post-conviction relief after an evidentiary hearing. This appeal follows.

Before addressing the merits, we are compelled under Moore v. State to first examine the timeliness of amended motions in each post-conviction case on appeal, even if the issue is not raised by either party. 2015 WL 1735533 (Mo. banc April 14, 2015). If it is determined that an amended motion filed by appointed counsel is untimely, but there has been no independent inquiry into abandonment, then the case should be remanded to the motion court for such inquiry. Id. It is our duty to enforce the mandatory timelines in the post-conviction rules, but "the motion court is the appropriate forum to conduct such an inquiry" into abandonment. Id.

Rule 29.15(g) provides that where, as here, an appeal of the judgment sought to be vacated, set aside or corrected is taken, "the amended motion shall be filed within sixty days of the earlier of: (1) the date both the mandate of the appellate court is issued and counsel is appointed or (2) the date both the mandate of the appellate court is issued and an entry of

---

[2] All statutory references are to RSMo (2000).

appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant." In this case, counsel was appointed on January 10, 2013, after the mandate was issued. When counsel entered her appearance, she requested a thirty-day extension of time pursuant to Rule 29.15(g). Therefore, the amended motion was due April 10, 2013, and the amended motion was filed on April 10, 2013. Because the motion was timely, there is no need to conduct an inquiry into abandonment. Thus, we proceed to review the merits of Movant's appeal.

Our review of the motion court's action under Rule 29.15 "shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k). We presume the motion court's denial of post-conviction relief is correct. McIntosh v. State, 413 S.W.3d 320, 323 (Mo. banc 2013). Findings and conclusions are clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. Id.

To prevail on a claim of ineffective assistance of counsel, the movant must establish by a preponderance of the evidence that: (1) trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and (2) counsel's deficient performance prejudiced defendant. Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006) (citing Strickland v. Washington, 466 U.S. 668, 687-92 (1984)). To satisfy the prejudice prong, the movant must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would have been different. Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). If a movant fails to satisfy one prong, we need not consider the other. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987).

In his first point, Movant, who is African-American, argues the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because Movant's appellate counsel was ineffective for failing to raise the claim that the State struck African-American venireperson Lillie Wilbourn ("Wilbourn") peremptorily in violation of Batson v. Kentucky. We disagree.

3

The standard for showing ineffectiveness of appellate counsel is essentially the same as that for trial counsel: the movant must show that appellate counsel breached a duty and prejudice resulted. Cummings v. State, 445 S.W.3d 648, 650-51 (Mo. App. E.D. 2014). Where a movant alleges ineffectiveness based on failure to raise a particular claim of error on appeal, the movant must show that the claim would have required reversal had it been brought, and that the error was so obvious from the record that a reasonably competent attorney would have recognized and asserted it. Id. Appellate counsel has no duty to present every issue asserted in the motion for new trial, and the movant must overcome the presumption that appellate counsel's choice regarding points on appeal was a matter of sound strategy. Id.

Under Batson, peremptorily striking venirepersons for no other reason than their race violates a defendant's right to equal protection under the law. State v. Murphy, 443 S.W.3d 721, 725 (Mo. App. E.D. 2014). In order to make a proper Batson challenge, a defendant must make a prima facie showing of purposeful discrimination; namely, that the defendant belongs to a cognizable race and that the prosecutor exercised peremptory strikes to remove members of the defendant's race from the jury. Id.

It is then for the State to rebut the prima facie case by offering a race-neutral explanation for the strike. Id. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Id.

Finally, if the State rebuts the prima facie case, the defendant bears the burden to show that the State's proffered race-neutral reasons are merely pretextual justifications for underlying discrimination. Id. A crucial, though not dispositive, factor in determining pretext is the existence of similarly situated white jurors who were not struck. Murphy, 443 S.W.3d at 725. Other factors include the degree of logical relevance between the proffered explanation and the case to be tried, the prosecutor's credibility based on his or her conduct during voir dire, the court's past experiences with the prosecutor, and the demeanor of the excluded venirepersons.

4

Id. The trial court must consider the totality of the circumstances in determining pretext, and we give considerable deference to the trial court's determination in light of its factual and subjective nature. Id. at 725-26.

In this case, Movant made a Batson challenge with respect to Wilbourn. The State responded that it struck Wilbourn because she told the court she pled guilty to a felony thirty years ago, not because of her race. The court then engaged in a lengthy discussion and attempt to determine the details on Wilbourn's conviction. Ultimately, they were unable to determine the precise details of her conviction beyond what she had stated due to the fact that it happened thirty years ago.[3] Thus, there was uncertainty regarding whether Wilbourn had a felony conviction. However, the State asserted she said under oath that she pled guilty to a felony thirty years ago. The court denied the Batson challenge, finding the State offered a race-neutral reason for the strike. The State also noted Wilbourn was the only person on the panel who appeared to have a felony conviction.

Movant's appellant counsel did not raise this claim on direct appeal. At the evidentiary hearing, Movant's appellate counsel testified she did not raise it because there was a lot of uncertainty regarding whether Wilbourn had a felony conviction. The State tried to investigate whether she did, in fact, have a conviction, but it was never clear that she did not have a felony conviction. Thus, Movant's appellate counsel thought this was a race neutral reason to strike Wilbourn. Movant's appellate counsel stated "[she] did not see it as a reversible issue on appeal."

The motion court found Movant failed to show there would be a reasonable probability that the claim would have succeeded on appeal because the State gave a race neutral reason for striking the African-American juror and there were no similarly situated jurors.

---

[3] In their search, they did find a misdemeanor conviction for stealing from 1993 for which Wilbourn received a 183-day sentence. Wilbourn did not mention this conviction at any point.

Movant contends there was a similarly situated white juror with a conviction for passing bad checks, who was not struck. However, as the State explained, this juror was not similarly situated because her conviction was a misdemeanor, not a felony. A misdemeanor conviction does not raise the same issue as a felony conviction. Section 494.425(4) provides that persons who have a felony conviction are ineligible for jury service, unless their civil rights have been restored. If a person with a felony conviction did serve on the jury, the jury's verdict could be thrown out for that reason, which would result in a new trial being ordered. See State v. Martinelli, 972 S.W.2d 424, 434 (Mo. App. E.D. 1998).

The record shows State offered a race-neutral reason for striking Wilbourn. The Movant was then unable to show this offered reason was pretextual. Thus, raising this claim on appeal likely would have been unsuccessful. Therefore, we find the motion court did not clearly err in denying Movant's Rule 29.15 motion for post-conviction relief because Movant's appellate counsel was not ineffective for failing to raise the Batson claim on appeal. Point denied.

In his second point, Movant argues the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because Movant's appellate counsel was ineffective for failing to raise a claim about the trial court's error in sustaining the State's objections to Movant's motion to cross-examine the State's witness Michelle Lawrence about a polygraph test she took that came back inconclusive. We disagree.

While Movant's trial counsel was cross-examining Michelle Lawrence the following exchange occurred:

> [MOVANT'S TRIAL COUNSEL]: Can we approach the bench, please?
> [THE COURT]: All right.
> (At this time, counsel approached the bench, and the following proceedings were had, out of the hearing of the jury)
> [MOVANT'S TRIAL COUNSEL]: I didn't tell [The State] in advance that I was going to approach the bench before I attempted to do something that I believe I'm entitled to do. That's what I'm doing now.
> [THE COURT]: All right. Thank you.

6

[MOVANT'S TRIAL COUNSEL]: The plea agreement, the written plea offer that [the State] has with Michelle Lawrence, one of the specific parts of the plea offer is that Michelle Lawrence must be willing to take a lie detector test as to the truth of her statements about these crimes. It's my understanding in a report that was provided to me last month by [the State] that Michelle Lawrence did take a lie detector test, and it came back inconclusive. In other words, she didn't pass and

[THE COURT]: It's not the same thing.

[MOVANT'S TRIAL COUNSEL]: It came back inconclusive.

[THE COURT]: All right.

[MOVANT'S TRIAL COUNSEL]: She did not -- I mean, I'm not sure what you mean by it's not the same thing. She did not, the polygraph examiner did not verify that she was being truthful.

[THE COURT]: All right. I'll agree to that if that's what happened.

[MOVANT'S TRIAL COUNSEL]: I understand that the law is that polygraph tests are generally inadmissible, but they're inadmissible because they're not considered reliable, and so they're not to be offered to prove whether or not a person really is or really isn't lying. That would not be my purpose in offering the results of the polygraph examination. The reason why I would be offering this would be because, to show what kind of effect it would have on Michelle Lawrence's state of mind with respect to how it might taint any statements or testimony that she might give. She's aware that this was a condition of her plea agreement. And she's also, I suspect, aware that the polygraph examiner could not verify her truthfulness, and I believe that that would cause her concern over what type of a sentence she might receive, to the extent that she's testifying truthfully, and I believe that that would encourage her to try and stretch her testimony or exaggerate things and try and make it as worse as she can.

[THE STATE]: My response, Your Honor, would be that it's incorrect to say that polygraph testimony is generally inadmissible. It is always inadmissible for any purpose, and it is the rare case that doesn't get reversed when, over objection, either side has tried to offer polygraph results in any way, shape or form. This, the results can come back that you passed, that you failed, or that you're inconclusive. This came back inconclusive. It would be completely improper and actually an error of law to allow the testimony to come in that she took a polygraph or the results of that polygraph. And, of course, if they try to spin it that, well, it wasn't verified she was telling the truth, then I see calling the polygraph examiner to say, "Oh, that's not true. She did not fail." And then we're really getting into a mess. So I think the proper thing to do is to not allow this area to be talked about at all because it is clearly error.

[THE COURT]: [Movant's trial counsel], first of all, I have to compliment you and commend you for doing this the way you're doing it. That is, taking it up to the bench rather than just blurting it out, but I don't know under any circumstances in which a polygraph would be properly admitted. That includes this one as well. So thanks for bringing it up, but I'm not going to let you go into it.

Movant's appellate counsel did not include the trial court's alleged error in not allowing

Movant's trial counsel to discuss Michelle Lawrence's polygraph test in Movant's direct appeal.

At the evidentiary hearing, Movant's appellate counsel testified she did not raise this issue in the direct appeal because she "didn't think it was admissible, or that there was an argument to be made." She further stated that while she has, as a public defender, challenged the idea that a polygraph is never admissible in a criminal proceeding, that is the current state of the law. Thus, she did not raise this claim because she did not believe it had merit.

The motion court found Movant's appellate counsel had no obligation to raise this issue on appeal because there was no merit to the argument in that polygraph tests are not admissible for any reason during a trial.

It is well-settled law that the results of polygraph tests are not admissible evidence. State v. Hall, 955 S.W.2d 198, 207 (Mo. banc 1997). The reason they are not admissible is because they lack scientific support for their reliability. State v. Biddle, 599 S.W.2d 182, 185 (Mo. banc 1980). It is also improper to introduce whether or not a polygraph test has been taken even if the results are not offered into evidence. Hall, 955 S.W.2d at 207.

We find the motion court's finding was not clearly erroneous. There is well-established case law showing that polygraph tests are inadmissible. Thus, any argument relating to cross-examining Michelle Lawrence about the polygraph test she took would not have been successful on appeal. We further note Movant failed to show he was prejudiced by his appellate counsel's failure to raise this claim. Given the substantial evidence of Movant's guilt, there is no reasonable probability that the result of the trial would have been different had this issue been raised.

Therefore, we find the motion court did not clearly err in denying his Rule 29.15 motion for post-conviction relief because Movant's appellate counsel was not ineffective for failing to raise a claim about the trial court's error in sustaining the State's objections to Movant's motion to cross-examine the State's witness Michelle Lawrence about a polygraph test she took that came back inconclusive. Point denied.

In his third point, Movant argues the motion court clearly erred in denying his Rule 29.15 motion for post-conviction relief because Movant's trial counsel was ineffective for consenting to a jury being picked from Pemiscot County. We disagree.

Movant contends the intent in having the jury picked in Pemiscot County was to find a jury that was not exposed to media about the case. However, Cape Girardeau television station KFVS is on cable television in Pemiscot County. Thus, Movant argues his trial counsel was ineffective for consenting to a jury being picked from Pemiscot County.

A change of venue is required when it is necessary to assure the defendant a fair and impartial trial. State v. Deck, 994 S.W.2d 527, 532 (Mo. banc 1999). In assessing the impact of potentially prejudicial publicity on prospective jurors, the critical question is not whether they remember the case, but whether they have such fixed opinions regarding the case that they could not impartially determine the guilt or innocence of the defendant. Id. at 532-33. The mere existence of pretrial publicity does not automatically require a change of venue. Milner v. State, 968 S.W.2d 229, 231 (Mo. App. S.D. 1998). A decision not to seek a change of venue demonstrates no incompetence by counsel unless it is manifestly wrong. Id.

The motion court found Movant failed to show he was prejudiced by some of the jury panel being exposed to pretrial media coverage. Moreover, Movant failed to show his counsel was ineffective for failing to seek a change in venue. Lastly, Movant failed to show the results of the trial would have been different had jurors been picked from another county.

At trial, the following exchange occurred when discussing Movant's motion to appear in court in street clothes and without restraints:

> [THE STATE]: Your Honor, my first reaction was that it was not going to be necessary to grant this at all because we were bringing a jury from somewhere else. So the jurors who would be watching TV or following the news would not be people who would have seen the defendant in any jail garb at any pre-trial motions. However, then I realized we are bringing the jury from Pemiscot County which may be in the KFVS viewing area. So I can see if the Court decided you wanted to tell the sheriff's department to have him in street clothes

9

when he comes to court even for pre-trial matters. You know, I can see where the Court might do that. However, I think, I don't think it's detrimental to a defendant to come to court not in the presence of the jury in a jail uniform. As to restraints, I think that should be left to the sheriff's department and what they consider necessary for security. But as to the clothing, I'd leave that up to the Court's discretion and what you think you should do.

[THE COURT]: Well, for the record, the defendant is in street clothing today. I have not checked with the media coordinator lately, but the last time I checked and looked at the chart showing their area of exposure, Pemiscot County is not listed as one of the counties that they participate in, although that may be by cable perhaps. I don't think it's on the list. I think I shared that with you, [Movant's trial counsel], did I not?

[MOVANT'S TRIAL COUNSEL]: That's true, Your Honor. You did share that with me, and you indicated on the sheet that you gave me that Pemiscot County was not included within the television station's broadcast viewing area, but we actually called the public defender who works in that county, and he said, [y]es, we get that station in Caruthersville.

[THE COURT]: I see. Well, that was one of the reasons we chose that county.

[MOVANT'S TRIAL COUNSEL]: Yes, sir. That's one of the reasons why I agreed to choose that county.

[THE COURT]: Is that by cable or satellite or what, or do you know, or did he say?

[MOVANT'S TRIAL COUNSEL]: He didn't say, Your Honor. He just simply said that that was one of the stations they got.

[THE COURT]: I'll be in touch with our media coordinator then. All right. I'll check into that.

The jury was then chosen from Pemiscot County. During voir dire, the trial court asked the venire panels how many of them had access to the KFVS television station. On the first panel, about half raised their hands. On the second panel, "just a handful" raised their hands.

Then later, when the venirepersons were asked if they had heard anything about the case before they began their jury service, a few raised their hands. The State then followed up, asking each venireperson who raised his or her hand "if [they could] promise . . . [to] decide the case only from the witness stand and the things that you hear from the witness stand." The State continued to discuss how the media sometimes gets things wrong and that people are not under oath when they talk to the media, unlike in a courtroom where what they will hear is evidence offered under oath. The State then restated that he needed their assurance that even if they had heard something else about the case, they could put it aside and decide the case only on the

evidence they heard in the courtroom. The State then proceeded to ask each individual venireperson, who had previously heard about the case, the source of what they heard and whether they could put the information they heard and decide the case on the evidence presented in the court. All of the venirepersons who were questioned responded that they could put aside what they had heard and decide the case based only on the evidence presented in court.

At the evidentiary hearing, Movant's trial counsel testified this was a high publicity case and so they wanted to get jurors who were not familiar with the facts or who had not been exposed to a lot of media. In addition, Movant's trial counsel stated "a very strong consideration for [him] in wanting to pick a jury from somewhere else [was that they] were trying [the] case against the prosecuting attorney of Cape Girardeau County, who was Morley Swingle. Morley Swingle [was] a very popular . . . prosecutor in that area. We didn't want to run the risk of having a [jury] consisting of Morley's banker and barber." Movant's trial counsel also testified that after finding out Pemiscot County received coverage from KFVS, he decided to choose the jury from Pemiscot County anyway because he researched the racial makeup of some of the other possible counties. Movant's trial co-counsel testified at the evidentiary hearing specifically that Pemiscot County has the second highest African-American population by percentage of county population in the State of Missouri, which influenced their decision to choose the jury from that county. Further, Movant's trial counsel stated he was able to ask all of the jurors if any previous knowledge of the case would influence their deliberations, and he was confident that such knowledge would not influence them or affect the outcome of the trial.

Thus, based on the questioning at voir dire set out above, we find the motion court did not clearly err in finding Movant failed to show he was prejudiced by some of the jury panel being exposed to pretrial media coverage. Further, we note Movant's trial counsel had strategic reasons for selecting jurors from Pemiscot County and not seeking a change to another county. Counsel is allowed wide latitude in conducting a defense and may use his best judgment in

11

matters of trial strategy. <u>Wolfe v. State</u>, 446 S.W.3d 738, 749 (Mo. App. S.D. 2014). Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. <u>Id</u>. Reasonable trial strategy does not become ineffective assistance of counsel because it did not work as hoped. <u>Id</u>.

Therefore, we find the motion court did not clearly err in denying his Rule 29.15 motion for post-conviction relief because Movant's trial counsel was not ineffective for consenting to a jury being picked from Pemiscot County. Point denied.

The judgment of the motion court is affirmed.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P. J. and
Gary M. Gaertner, Jr., J., concur.