Dominic Lamar HAWKINS, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 104180

Missouri Court of Appeals,
Eastern District,
DIVISION FOUR.

FILED: March 7, 2017

Andrew E. Zleit, 1010 Market St., Suite 1100, St. Louis, MO 63101, for Appellant.

Josh Hawley, Dora A. Fichter, P.O. Box 899, Jefferson City, MO 65102, for Respondent.

## Introduction

KURT S. ODENWALD, Judge

Dominic Lamar Hawkins ("Hawkins") appeals the denial of his Rule 29.15[1] motion after an evidentiary hearing. On appeal, Hawkins argues that his defense counsel was ineffective in creating a nega-

---

1. All rule references are to Mo. R. Crim. P. (2016).

tive inference for the jury when he told the jury in his opening statement that Hawkins would testify, and then did not call Hawkins to testify at trial. Because defense counsel's decision to tell the jury that Hawkins would testify was a reasonable trial strategy, later complicated by an unforeseeable event, the motion court did not clearly err in denying Hawkins's claim of ineffective assistance of counsel. We affirm.

### Factual and Procedural History

On the day of the crime, Hawkins pulled up in a Pontiac Grand Am beside a car containing Charles Meeks ("Meeks") and Asraella Aitch ("Aitch") and began shooting. Bullets struck Meeks and Aitch, but both lived. Meeks and Aitch identified Hawkins as the shooter based on their prior interactions.[2]

Hawkins was charged with two counts of first-degree assault and two counts of armed criminal action. In his opening statement at trial, defense counsel stated:

> [T]he evidence from the testimony of Mr. Hawkins will be that, one, he doesn't own a Grand Am. Two, he doesn't have a weapon like this .9 millimeter, he didn't own this particular weapon, and he didn't do the shooting on St. Louis Avenue.
>
> He can't tell you exactly where he was. He can tell you his routine during that time period, that during that time period, he was with his girlfriend, Tia

Hughes, that when he wasn't working in construction, that he was preparing his family, that he was getting ready to have a baby, that he was with her most every day all the time, but he wasn't on St. Louis Avenue, he didn't even own a car to drive, and at the times that he had to drive, he had to borrow Tia's mother's red car to drive and not all the time would she allow him to drive that car around.

> You'll also get to observe Mr. Hawkins on the stand. You'll observe his demeanor. You'll get to observe what he looks like, and you'll get to observe any physical characteristics that Mr. Hawkins may have that may stand out in your mind if anybody would observe him even at a glance.

Hawkins did not testify at trial, and the jury subsequently convicted him on all counts.

After trial, Hawkins filed an amended Rule 29.15 motion asserting that defense counsel was ineffective (1) in promising the jury it would hear Hawkins's testimony and then not presenting it and (2) in failing to secure the testimony of Tia Hughes ("Hughes"), Hawkins's girlfriend, who would have corroborated his potential alibi defense.[3]

The motion court held an evidentiary hearing, where defense counsel testified that he initially intended to present an alibi defense at trial. The alibi defense was to consist of the joint testimony of Haw-

---

**2.** At trial, Meeks testified that he had sold drugs to Hawkins and then later had been involved in a fist-fight with Hawkins, in which he blackened Hawkins's eye. Aitch testified that she had previously encountered Hawkins, but admitted to knowing Hawkins only by the name "Young One." Aitch was able to pick Hawkins out of a line-up.

**3.** Although the amended motion was untimely, the motion court granted a hearing and

denied the motion on the merits. Hawkins appealed. On appeal, this Court noted that the amended motion was untimely and remanded for an abandonment inquiry. Hawkins v. State, 476 S.W.3d 313, 316 (Mo. App. E.D. 2015). On remand, the motion court found abandonment and once again denied the motion on the merits after an evidentiary hearing.

kins and Hughes, both of whom were prepared to testify that Hawkins was with Hughes at her home around the time of the crime.

To secure Hughes's testimony, defense counsel testified that he personally corresponded with Hughes and her mother, and he subpoenaed Hughes. Defense counsel testified that Hughes appeared with her mother at Hawkins's original trial date in May 2009, but the trial was continued. After that trial date, Hughes became difficult to reach. Between May 2009 and September 2009, defense counsel repeatedly attempted to contact Hughes through his investigator and by phone, but the attempts were unsuccessful. The day before trial in September 2009, defense counsel's investigator was able to contact Hughes's mother by phone. Hughes's mother became angry, informing the investigator that her daughter was a minor and that she did not want her daughter testifying at trial. Defense counsel testified at the hearing that he gave his opening statement believing Hughes would appear to testify. Defense counsel continued to contact Hughes after trial had begun, and he even requested a body attachment. Despite defense counsel's efforts, Hughes did not appear at trial.

Defense counsel explained at the evidentiary hearing that he considered Hawkins's alibi defense untenable without Hughes's corroborating testimony. For this reason, defense counsel changed his strategy during the course of trial from an alibi defense to a bias defense. Defense counsel planned to expose—through cross-examining Meeks—that Meeks's violent history with Hawkins provided motivation for Meeks to fabricate Hawkins's involvement in the shooting. The proposed bias defense rested heavily on the relationship between Hawkins and Meeks, and specifically a soured drug deal. However, both defense counsel and Hawkins testified that if Hawkins had taken the stand at trial, he would have testified that he did not know Meeks and had never purchased drugs from him. Fearing that Hawkins's alibi testimony was not credible without Hughes's joint testimony and that Hawkins's testimony concerning Meeks would destroy his bias defense, defense counsel advised Hawkins not to testify.

After the evidentiary hearing, the motion court denied Hawkins's motion for post-conviction relief. The motion court found that defense counsel reasonably believed the defense at trial would be an alibi defense and that, once the alibi defense was no longer viable, defense counsel reasonably advised Hawkins not to testify in order to preserve his bias defense. This appeal follows.

## Point on Appeal

Hawkins argues the motion court clearly erred in denying his amended Rule 29.15 motion because his defense counsel was ineffective in promising Hawkins's testimony to the jury and then failing to call him to testify.

## Standard of Review

■ In reviewing the denial of a Rule 29.15 motion for post-conviction relief, we determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Johnson v. State, 333 S.W.3d 459, 463 (Mo. banc 2011); Rule 29.15(k). The motion court's findings and conclusions are presumptively correct; we will reverse only if we are "left with a definite and firm impression that a mistake has been made" after reviewing the entire record. Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

#### Discussion

To prove ineffective assistance of counsel, Hawkins must satisfy the familiar two-prong test set out in Strickland v. Washington, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Johnson v. State, 406 S.W.3d 892, 898–99 (Mo. banc 2013). Under Strickland, a movant must demonstrate that: (1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure. Id.

To satisfy the performance prong of the Strickland test, the movant must overcome the "strong presumption" that any challenged action was sound trial strategy. Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). "A decision made by counsel based on reasonable trial strategy is virtually unchallengeable." Tucker v. State, 468 S.W.3d 468, 473 (Mo. App. E.D. 2015). The decision of what defenses to present to the jury and what witnesses to introduce is generally a matter of trial strategy. See, e.g., Johnson, 406 S.W.3d at 898–99 (holding that not selecting a diminished-capacity defense to present at trial was trial strategy); Strong v. State, 263 S.W.3d 636, 652 (Mo. banc 2008) (holding that not calling defendant's friend as a witness was trial strategy). In matters of trial strategy, "[c]ounsel is allowed wide latitude in conducting a defense and may use his best judgment." Patterson v. State, 467 S.W.3d 395, 406 (Mo. App. E.D. 2015). However, this wide latitude is not without limits.

The failure to present evidence promised to the jury is a serious failure and any attorney who does so, "opens himself up to criticism of the effectiveness—or ineffectiveness—of his representation of the defendant." Midgyett v. State, 392 S.W.3d 8, 13 (Mo. App. W.D. 2012). Leaving an evidentiary promise unfulfilled can establish that defense counsel has fallen below an objective standard of reasonableness, as demanded by the first prong of Strickland. See, e.g., Blankenship v. State, 23 S.W.3d 848, 851 (Mo. App. E.D. 2000) (holding that defense counsel was unreasonable where his promises to the jury in opening statement went unfulfilled as a "direct result of deficiencies in [defense counsel's] own performance"). However, a showing of an unfulfilled promise to the jury is not conclusive evidence of defense counsel's ineffective assistance. "Instead, when determining whether an unfulfilled evidentiary promise made by defense counsel could contribute to a finding of counsel's ineffectiveness, courts look to whether 'unforeseeable events' occurring during the trial would justify counsel's change in trial strategy." Midgyett, 392 S.W.3d at 13 (citing Francis v. State, 183 S.W.3d 288, 303 (Mo. App. W.D. 2005)). This exception recognizes that "[d]ecisions of trial strategy, that were reasonable at the time they were made, cannot form the basis of a claim of ineffective assistance of counsel even if, in hindsight, better choices could have been made." Cole v. State, 152 S.W.3d 267, 270 (Mo. banc 2004).

Here, defense counsel pursued an initial alibi defense that was a reasonable trial strategy. Hawkins told defense counsel that he had not committed the shooting but was with his girlfriend, Hughes, who could corroborate his alibi. Defense counsel then interviewed Hughes, who confirmed that she would testify at trial that Hawkins was with her at her home around the time of the shooting. Based on these interviews, defense counsel determined that Hawkins's best available defense was an alibi defense. Therefore, the selection of an alibi defense was reasonable trial strategy and well within the wide latitude afforded to defense counsel. See Patterson v.

State, 467 S.W.3d 395, 406 (Mo. App. E.D. 2015).

 We acknowledge that in pursuing this strategy, defense counsel left unfulfilled an evidentiary promise to the jury. Defense counsel promised that Hawkins would testify and then did not present Hawkins's testimony. Importantly though, defense counsel's decision not to elicit Hawkins's testimony only occurred after Hughes failed to appear. Defense counsel testified that he changed trial strategies from an alibi defense to a bias defense only after it became apparent that despite his efforts, Hughes would not appear to testify. The critical question then is whether defense counsel reasonably believed Hughes would appear to testify at trial at the time he made his opening statement. If so, her absence would constitute an "unforeseeable event" justifying defense counsel's change in trial strategy. Midgyett, 392 S.W.3d at 13.

Defense counsel's testimony at the evidentiary hearing suggests that he had a reasonable belief that Hughes would appear at trial. First, Hughes appeared to testify on Hawkins's behalf at the initial trial date. Second, Hughes was intimate with Hawkins and she had expressed motivation to testify on his behalf. Hughes also was under a legal obligation to appear because she was under subpoena. Hughes's past appearance at trial, her motivation to support Hawkins, and her legal obligation to appear allowed defense counsel a reasonable belief that she would appear at trial. Necessarily then, defense counsel's derivative promise that Hawkins would testify as part of an alibi defense was a reasonable choice of trial strategy.

"Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." Miller v. State, 478 S.W.3d 530, 535 (Mo. App. E.D. 2015).

We are troubled, however, by the portions of the record showing that defense counsel was aware of the difficulties in contacting Hughes after the initial trial setting, and learned the day before trial that Hughes's mother did not want her daughter to testify. These circumstances suggest that, prior to making his opening statement, defense counsel had an awareness regarding the uncertainty of the planned alibi defense. We must determine if that level of uncertainty, when viewed in light of the totality of the circumstances, overcomes the "strong presumption" that defense counsel's decision to proceed with the alibi defense at the beginning of trial was sound strategy. We are not persuaded that the presumption is overcome.

The later difficulties in contacting Hughes, when weighed against Hughes's prior trial appearance, her motivation to testify, her legal obligation to appear, and defense counsel's preference to offer the stronger alibi defense—do not leave us with a "definite and firm impression" that the motion court erred in finding defense counsel's opening statement to be reasonable trial strategy. See Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

Hawkins cites one Missouri case, Blankenship v. State, 23 S.W.3d 848 (Mo. App. E.D. 2000), in support of his argument that defense counsel was ineffective for failing to fulfill his evidentiary promise to the jury.[4] Blankenship is inapposite. In Blank-

---

4. In addition to Blankenship, Hawkins cites a number of federal cases holding that unfulfilled evidentiary promises to the jury can predicate ineffective-assistance-of-counsel claims. These cases also recognize that unful-filled promises "may be justified when 'unexpected developments ... warrant ... changes in previously announced trial strategies.' " United States ex. rel. Hampton v. Leibach, 347 F.3d 219, 257 (7th Cir. 2003) (citing

enship, defense counsel had not even spoken to his expert witness when he promised that expert's testimony to the jury. Id. at 850. When defense counsel finally questioned the expert (after trial had begun), he realized that the expert's testimony was incompatible with the defense theory and hastily evolved a defense excluding the expert witness. Id. This Court held that defense counsel was ineffective because his failure to ascertain the expert's testimony before trial and his subsequent unfulfilled promise was a "direct result of deficiencies in his own performance." Id. at 851. Here, the motion court found credible defense counsel's testimony at the hearing that he had done everything in his power to ensure Hughes's presence and pursue the alibi defense. Unlike Blankenship, defense counsel's broken promise was not the direct result of deficiencies in his own performance.

The facts before us poignantly illustrate the difficult and challenging circumstances facing defense counsel. Does defense counsel abandon the potentially stronger alibi defense in the opening statement by telling the jury that Hawkins's defense is that of bias? Does defense counsel forego any substantive opening statement to the jury because he is uncertain which defense he may present? Does defense counsel reserve the opening statement with the possibility of losing the opportunity to make an opening statement when, as here, defense counsel rested its case without presenting any evidence? Or does defense counsel proceed in his opening statement with the alibi defense that Hawkins described, relying upon his past dealings with Hughes, her intimate relationship with Hawkins, and the subpoena served on her? Each of the choices available to defense counsel, due to circumstances beyond his control, posed potential advantages and liabilities. Given the record before us, we cannot and will not second-guess in hindsight the decision defense counsel was required to make at the start of trial. Because defense counsel employed a reasonable trial strategy, both in promising Hawkins's testimony to the jury and in changing trial strategy only after the alibi defense was no longer viable, the motion court did not clearly err in denying Hawkins's Rule 29.15 motion. Point denied.

### Conclusion

The judgment of the motion court denying Hawkins's Rule 29.15 motion after an evidentiary hearing is affirmed.

James M. Dowd, P.J., concurs.

Gary M. Gaertner, Jr., J., concurs.

Ouber v. Guarino, 293 F.3d 19, 29 (1st Cir. 2002)).