

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| DARWIN D. STEVENSON, | ) | No. ED109610 |
| | ) | |
| Movant/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1922-CC10833 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable David L. Dowd |
| | ) | |
| Respondent. | ) | FILED: March 29, 2022 |

## Introduction

Darwin D. Stevenson (Movant) appeals from the Findings of Fact, Conclusions of Law and Order (Judgment) denying his amended Rule 29.15 motion for post-conviction relief without an evidentiary hearing. We affirm.

## Factual and Procedural Background

The facts of the underlying case arose from an incident that occurred on December 18, 2016, at the St. Louis City Justice Center (the Justice Center). At the time, Movant and another inmate, Victim, quarreled in the prison common room over a request to supervising Corrections Officer Aaron Perkins (Officer Perkins) to change the television channel.

After the confrontation, Victim returned to his cell. Movant followed Victim, entered Victim's cell, and threatened Victim with physical and sexual violence. Movant and another inmate (Bell) then began repeatedly hitting Victim, who fought back and called for help. Another inmate (C.S.) arrived and attempted to verbally intervene. Victim managed to leave his cell, but

Movant and Bell pursued Victim onto the catwalk and punched Victim again, knocking him unconscious. During the struggle, in which Movant and Bell were acting together, Bell also hit C.S. Victim sustained a concussion, broken jaw, and back pain. The Justice Center's surveillance video captured the events in the common room and on the catwalk outside Victim's cell.

On March 14, 2017, Movant was charged by indictment with two counts of assault and one count of attempted sodomy. On March 23, 2017, the State disclosed to Movant all discovery materials—including the Justice Center surveillance video, witness disclosures, and a written statement obtained from Officer Perkins.

On January 8, 2018, trial counsel requested a continuance of the trial date to allow additional time to conduct discovery and to prepare for trial. The court denied the request for continuance and the case was set for trial on January 16, 2018. Trial counsel met with Movant twice before trial. Movant moved for a change of judge, which was granted. Movant then renewed his motion for a continuance before the trial court on the day of trial. The trial court denied the motion.[1]

At trial, the State called Victim and the responding police officer to testify about the incident. Movant testified in his own defense that Victim was the initial aggressor and that the surveillance video was incomplete because earlier footage would have shown that Victim began the fight by overturning a chair and threatening Movant. Following the trial, the jury found Movant guilty of first-degree and third-degree assault, but acquitted Movant of attempted sodomy.

---

[1] We note that between Movant's indictment and the commencement of his trial on January 16, 2018, trial counsel moved for and was granted four continuances, two of which were to investigate the case and conduct depositions.

Movant was sentenced as a persistent offender to a total of fifteen years' imprisonment. Movant's convictions were affirmed on direct appeal in State v. Stevenson, 573 S.W.3d 761 (Mo. App. E.D. 2019). Subsequently, Movant timely filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. Following the appointment of post-conviction counsel, an Amended Motion was timely filed in which Movant alleged, *inter alia*, that: 1) "Trial counsel was ineffective for failing to either compel the production of the CO Perkin[ ]s['s] statement, or depose CO Perkins…."; 2) "Trial counsel was ineffective for failing to subpoena the entirety of the surveillance video…."; 3) "Trial counsel was ineffective for . . . failing to properly investigate[ ] [and] failing to conduct depositions."; and 4) "Trial counsel was ineffective for failing to seek a case load hearing under RSMo. 600.063 simultaneously with attempt to continue the matter." The motion court denied Movant's motion for post-conviction relief without an evidentiary hearing finding, *inter alia*, that Movant "failed to allege grounds that would entitle him to relief if true and which are not refuted by the record." This appeal follows.[2]

Standard of Review

Appellate review of the motion court's ruling is limited to determining whether the motion court's findings and conclusions are clearly erroneous, and a "movant is entitled to an evidentiary hearing only if: (1) [the movant] pleaded facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant." Rule 29.15(k); Booker v. State, 552 S.W.3d 522, 526 (Mo. banc 2018). To successfully state a claim for ineffective assistance of counsel, the movant must allege facts "demonstrating: (1) that counsel's performance did not conform to the degree of skill, care,

---

[2] Additional facts relevant to Movant's points on appeal will be set forth, as needed, in the discussion section below.

3

and diligence of a reasonably competent attorney, and (2) that counsel's deficient performance actually prejudiced the movant." Id. at 531.

In determining whether a movant has met his or her burden to show ineffective assistance of counsel, courts must indulge a strong presumption "that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (internal quotation omitted). And whether counsel's performance conformed to the degree of skill, care, and diligence of a reasonably competent attorney is an "inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." Harrington v. Richter, 562 U.S. 86, 110, 131 S.Ct. 770, 178 L.Ed. 2d 624 (2011). "Because the inquiry is an objective inquiry into the reasonableness of counsel's performance, an evidentiary hearing will not always be necessary to adjudicate claims of ineffective assistance of counsel." McLemore v. State, 635 S.W.3d 554, 559-60 (Mo. banc 2021).

<u>Statement and Testimony of Officer Perkins</u>

In Point I, Movant argues the motion court clearly erred in denying, without an evidentiary hearing, his Rule 29.15 claim that trial counsel was ineffective for failing to obtain Officer Perkins's prior statement or to depose him. We disagree.

In order to succeed on a claim of ineffective assistance of counsel for failure to investigate, a movant must: "(i) specifically describe the information his attorney failed to discover, (ii) establish that a reasonable investigation by trial counsel would have resulted in the discovery of such information, and (iii) prove that the information would have aided or improved his position at trial." Gurley v. State, 431 S.W.3d 511, 514 (Mo. App. E.D. 2014), quoting Cornelious v. State, 351 S.W.3d 36, 46 (Mo. App. W.D. 2011). Moreover, the decision of

4

whether to interview or depose a witness is generally a matter of trial strategy and "[t]raditionally, the manner in which trial strategy is implemented does not provide an adequate basis for an ineffective assistance of counsel claim." Fynn v. State, 763 S.W.2d 210-211 (Mo. App. E.D. 1988).

In his amended Motion, Movant alleged the State committed a Brady[3] violation by failing to disclose Officer Perkins's statement and trial counsel was ineffective for failing to either compel the production of Officer Perkins's statement or to depose or call him to testify at trial. Movant alleged the State's withholding of Officer Perkins's Garrity[4] statement and his removal from the endorsed witness list strongly implied his testimony did not support the State's theory that Movant planned the attack and acted in concert with others.

In denying Movant's claim, the motion court found that "[Movant] has not stated specifically how the defense was prejudiced or what he believes the statements would show." The motion court further found that "[g]iven the facts and testimony in this case as relates to Officer Perkins, that he did not stop the assault and was told . . . that he . . . did not see or hear anything, it is unclear how any statement by Perkins would have provided a viable defense…." The motion court's findings and conclusions are not clearly erroneous and are supported by the record.

Here, the record shows that on March 14, 2017, the State filed an indictment against Movant endorsing Officer Perkins, among others, as potential witnesses. On March 23, 2017, the State filed a letter itemizing the discovery it was providing to the defense, which included a "Written Statement – A. Perkins (1 page)," "Justice Center Staff Work Rules," and a "Letter

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).
[4] Garrity v. New Jersey, 385 U.S. 493 (1967).

5

Concerning Garrity Statements." On May 2, 2017, the State filed a supplemental list of witnesses withdrawing its endorsement of Officer Perkins.

On January 16, 2018, during a pretrial hearing on trial counsel's motion for continuance, trial counsel noted that Officer Perkins "was a guard in jail who was essentially supervising the cell blocks." Trial counsel argued the State had not made available to the defense "some [Garrity] statements that . . . [Officer Perkins] made to his employer" and, therefore, trial counsel was deprived of "the opportunity to litigate that issue." In response, the prosecutor admitted Officer Perkins was originally endorsed but subsequently unendorsed because "as a requirement of working [at the Justice Center], [employees] are forced to give statements to their employer, statements which cannot be used against them in court." The prosecutor further explained the State was "under no obligation whatsoever to turn this over since he is not a witness for [the State]" and "[he] merely did the courtesy to [trial counsel] and his predecessor to letting [sic] them know that such a statement existed."

At trial, the State relied upon statements allegedly made by Movant to Officer Perkins before the attack to argue that Movant was planning an attack on Victim, was acting in concert with others, and Officer Perkins did nothing to stop it. Victim testified at trial that "[he] heard [Movant] tell Perkins he didn't hear nothing, see nothing . . . ." Movant admitted on direct examination that he heard on the recording "[P]op my cell," and, "[Y]ou didn't hear or see anything." Movant admitted saying the first part, but he denied saying the second part, and he claimed he was not sure who had said the second part. But Movant also conceded it was "[m]ore than likely" that someone said the second part "because [he and Victim] were about to fight it out in the cell[.]"

6

With respect to this claim, the amended motion referred to a "recorded statement" by Officer Perkins that he apparently gave to his employer, but indicated the "exact content" of the alleged statement was "unknown." The amended motion went on to allege that based on "the sequence of events," the statement was "favorable to [Movant]" but failed to specifically describe the information that trial counsel was allegedly ineffective for failing to obtain. The amended motion further alleged because "the State elected not to present [Officer Perkins's] testimony and suppress his statement, … the natural conclusion is that CO Perkins made a statement or would have testified in a way that contradicted the State's theory of the case." The amended motion alleged "[t]rial counsel was ineffective for failing to either compel the production of the CO Perkin[ ]s['] statement, or depose CO Perkins." Without more, the amended motion failed to specifically allege how Officer Perkins's statement or deposition would have been advantageous to Movant and therefore how trial counsel was ineffective for failing to include these.

Furthermore, Movant failed to allege in his amended motion how the absence of Officer Perkins's statement or deposition, if admissible, prejudiced Movant. The statement "You didn't hear or see anything," would not have created a viable defense because it would not have negated evidence that the statement was nevertheless made, as Movant conceded at trial. The statement was relevant to show Movant's intent to engage in conduct that he wanted Officer Perkins to ignore, such as assaulting Victim, and its probative value would not have been significantly affected by testimony that Officer Perkins did not actually hear the statement, given Movant's concession that the statement was in fact made. Finally, regardless of whether it was Movant or someone else who told Officer Perkins to ignore what was about to happen, Movant's own trial testimony undercuts his claims on appeal. At trial, Movant admitted he contemplated

going to one of the cells to fight Victim during their initial confrontation in the common area, he shortly thereafter followed Victim to his cell, and he swung at Victim shortly after entering the cell. Movant also admitted it was "[m]ore than likely" that whoever said, "You didn't hear or see anything," said it "because [he and Victim] were about to fight it out in the cell[.]"

Here, Movant failed to allege sufficient facts, not refuted by the record, showing trial counsel was ineffective for failing to obtain Officer Perkins's prior statement or deposition, and its admission would have created a reasonable probability of a different outcome at trial. Because Movant failed to meet his burden of pleading unrefuted facts that would entitle him to post-conviction relief, the motion court did not clearly err in denying Movant's claim without an evidentiary hearing. Point I is denied.

<u>Surveillance Tape</u>

In Point II, Movant argues the motion court clearly erred in denying, without an evidentiary hearing, his Rule 29.15 claim that trial counsel was ineffective for failing to obtain the "entire" surveillance video. We disagree.

In order to succeed on a claim of ineffective assistance of counsel for failure to investigate, a movant must: "(i) specifically describe the information his attorney failed to discover, (ii) establish that a reasonable investigation by trial counsel would have resulted in the discovery of such information, and (iii) prove that the information would have aided or improved his position at trial." <u>Gurley</u>, 431 S.W.3d at 514.

In his amended motion, Movant alleged that "[trial] counsel was ineffective for failing to take any action to subpoena, preserve[ ], or acquire the entirety of the surveillance video" because the "entire" video was key to establishing Victim was the initial aggressor and Movant was acting in self-defense. Further, Movant alleged that "[t]rial counsel did not make any efforts

8

to secure the entirety of the video, or even to develop the circumstances that could have led to a spoliation claim. Reasonable counsel would have done more to ensure that all evidence that could support Movant was preserved or acquired."

In denying this claim, the motion court first noted that "[i]t was unclear whether [the surveillance video] had been available or was taped over." The motion court also noted that Movant himself "seemed to back off his assertions about the seriousness of the beginning [of the incident] when later in his testimony he testified [Victim] had only overturned one of the chairs…." The motion court found that "[w]ith regard to demonstrating [Victim's] alleged aggressive action, the conduct at issue occurred after [Victim] left the common area and returned to his cell and it is unlikely therefore the missing portion of the video would have aided [Movant's] case or provided a viable defense…." The motion court's findings and conclusions are not clearly erroneous and are supported by the record.

On direct examination, Movant testified, "Well, really, this isn't the whole video. Initially, [Victim] gets up and he starts flipping over chairs and whatnot. You back up and you see [the corrections officer] pick the chair back up. Then, the channel is changed back to . . . whatever channel he wanted to watch after he sat down. That's when I stood up and said, "[C]hange the channel back . . . ."

On cross-examination, Movant again asserted there was "a whole part missing" from the recording showing Victim throwing chairs and "basically . . . throwing a tantrum over the channel…." Later, however, Movant testified it was "[r]eally, just like a couple of seconds, maybe a minute" that was missing and Victim was not "[r]eally, it wasn't tossing chairs. He just flipped over a chair to show his frustration about the channel being changed, pacing back and forth, how it was disrespectful and he hate St. Louis guys and this, that the other."

9

During the exchange, the prosecutor indicated Movant's attorneys could have obtained the video from the Justice Center, as it was their property, but trial counsel objected, stating, "This video would have long since been overwritten by now," and that "the evidence . . . is no longer available." Trial counsel further highlighted that the first time Movant met with an attorney was in April 2017, more than three months after the incident.

Here, once again, Movant failed to allege sufficient facts showing reasonable efforts by counsel to obtain the "entire" surveillance recording would have been successful or that trial counsel's alleged failure resulted in prejudice. While the amended motion alleged "[t]rial counsel did not make any efforts to secure the entirety of the video," it failed to allege that had trial counsel made reasonable efforts, the "entire" recording would have been available and ultimately secured given the three-month gap between the occurrence of the incident and the date when Movant first met with trial counsel. Additionally, Movant failed to allege sufficient facts as to what the "entire" recording would have shown, specifically what "aggressive" behavior on the part of Victim the recording would have exposed. Movant's amended motion merely alleged it was "importan[t] [to] secur[e] the video to demonstrate [Victim's] aggressive action toward him," that it would have corroborated Movant's trial testimony and refuted the testimony of the witnesses against him, and that the surveillance video that was obtained was "incomplete."

Finally, it is unlikely the alleged missing portion of the video would have supported a self-defense or defense of others claim. The surveillance video, which was played for the jury, showed a group of inmates, including Victim and Movant, sitting peacefully in the common area, watching television before the incident. The surveillance video also showed the assault taking place after Victim had withdrawn from the common area to his cell, with Movant subsequently following Victim into his cell, Victim escaping from his cell while calling for help, and then

10

being beaten by Bell and Movant and resulting in Victim being knocked unconscious. At trial, Movant admitted he swung first while in Victim's cell. Therefore, even if the "entire" surveillance video would have shown Victim "flipp[ing] over a chair" in the common room in response to the channel being changed and "pacing back and forth," as Movant contended, it was not reasonably probable that such evidence would have convinced the jury that Movant was not the initial aggressor given the other evidence presented at trial.

Because Movant failed to allege sufficient facts, not refuted by the record, showing an "entire" video was available and could have been obtained by trial counsel through reasonable efforts or that its admission at trial would have created a reasonable probability of a different outcome, the motion court did not clearly err in denying Movant's motion for post-conviction relief without an evidentiary hearing. Point II is denied.

<u>Additional Witnesses</u>

In Point III, Movant argues the motion court clearly erred in denying, without an evidentiary hearing, his Rule 29.15 claim that trial counsel was ineffective for failing to investigate and call witnesses A.W., C.S., and B.C., who were present during the incident and could have provided additional context, including who the initial aggressor was. We disagree.

Generally, to succeed on an ineffectiveness claim based upon counsel's failure to call a witness, the movant must show: (1) that trial counsel knew or should have known of the witness's existence; (2) that the witness could be located through reasonable investigation; (3) that the witness would testify; and (4) that the witness's testimony would have produced a viable defense. <u>Worthington v. State</u>, 166 S.W.3d 566, 577 (Mo banc 2005). "A 'viable defense' is one which has a reasonable probability of outweighing the aggravating evidence and changing the outcome of the trial." <u>Porter v. State</u>, 575 S.W.3d 731, 736 (Mo. App. E.D. 2019), citing

11

Deck v. State, 381S.W.3d 339, 346 (Mo. banc 2012). Regardless, trial counsel's decision "not to call a witness is presumed to be a matter of trial strategy and a movant must clearly show otherwise before we will find ineffective assistance." Midgyett v. State, 392 S.W.3d 8, 13 (Mo. App. W.D. 2012). When the decision whether or not to call a witness is a matter of trial strategy, it is virtually unchallengeable. Worthington, 166 S.W.3d at 577.

In his amended motion, Movant alleged he requested that his attorney meet with and interview other witnesses to the incident, because he believed "they could provide beneficial testimony," but trial counsel never even contacted said witnesses. Movant further alleged that as a result of trial counsel's deficient performance, he suffered prejudice.

In denying this claim, the motion court found that "[Movant] names witnesses but does not state what their testimony would have been and how they would have helped him, or whether they could have been located, would have testified or would have provided a viable defense." The motion court also noted that "C.S. was the inmate who tried to diffuse the assault and was attacked[,] so it was unlikely he would have provided a viable defense." The motion further court found "[Movant's] claim [to be] conclusory factually, and any prejudice [to be] totally speculative." The motion court's findings and conclusions are not clearly erroneous and are supported by the record.

Here, the record shows that on March 23, 2017, the State filed a discovery letter which included "Internal Interview[s]" of both C.S. and B.C., as well as Victim and two other individuals.

Prior to trial, on a hearing on Movant's motion for continuance, trial counsel noted that "[t]here were numerous individuals in the cellblock at the time of the events precipitating the alleged offenses…, and we think that would contribute to factual and legal arguments that could

12

be made by either side, and could aid the defense if the trial had been continued." Trial counsel stated none of those inmates had been interviewed. The prosecutor then responded that "[m]ost of the inmates wanted absolutely nothing to do with this" and that "[a] handful of them made statements to the corrections investigators." The prosecutor then continued that "[t]hose statements have been disclosed to [trial counsel] and his predecessors…" elected not to interview the additional witnesses.

Later, during the hearing on Movant's motion for new trial, trial counsel stated that, without a continuance, "[they] could not investigate, for example, the co-victim in the case, . . . whether that person would, in fact, be a witness that would be beneficial to [Movant] at trial." Trial counsel further argued that "there [were] numerous other individuals who were in the cell block at the time the incidents precipitating this incident occurred" and that "those individuals may well have buttressed [Movant's] case at trial…."

Finally, during the post-sentencing examination and inquiry into trial counsel's performance, Movant told the trial court he discussed "calling" C.S. as a witness with trial counsel. When the trial court asked if there were any other people he thought trial counsel should have spoken to but did not, trial counsel interjected that "until [Movant] had the opportunity to speak with post-conviction relief counsel and develop whatever claims he may have," he advised Movant not to respond to further questions. Movant then stated, "I feel like this, Your Honor, had we had the sufficient enough time to prepare the trial, then I feel like it would have been better, the outcome would have been better."

Movant argues that based on this record and without an evidentiary hearing, the motion court prematurely concluded the additional witnesses would not have given "unqualified support" for Movant with their testimony. However, as correctly pointed out by the State,

13

Movant's amended motion failed to allege sufficient facts showing the identified witnesses could have been located through reasonable investigation or that they would have ultimately testified at trial if called. Worthington, 166 S.W.3d at 577. The amended motion only alleged Movant had provided his attorneys with the names of the identified witnesses and "none of the witnesses [were] contacted." Further, the amended motion alleged the addresses of the identified witnesses were "unknown." Because Movant's amended motion failed to allege the witnesses could have been located through reasonable investigation or that they would have testified, it failed to allege sufficient facts showing trial counsel was ineffective for failing to contact or call these witnesses.

Additionally, Movant failed to allege sufficient facts detailing the substance of the witnesses' testimony and therefore failed to show how their testimony would have provided a viable defense. Id. The amended motion alleged Movant believed the witnesses "could provide beneficial testimony" and his "defense was hamstringed" as a result. Based on these "facts," the motion court did not clearly err in finding the witnesses' testimony would not have provided Movant with a viable defense and trial counsel was not ineffective for failing to call the witnesses.

Finally, the record refutes Movant's claim of prejudice. Porter, 575 S.W.3d at 736. Movant's trial testimony clearly established that he himself was the initial aggressor. Movant testified that after the disagreement in the common room ended, both he and Victim went to their separate cells. Movant testified he went back to the common room and then went upstairs to Victim's cell. He testified that when he got to Victim's cell, Victim disrespected him. Movant admitted he swung first. After the altercation in Victim's cell, the surveillance video showed Victim exiting his cell, and Bell and Movant subsequently striking Victim without provocation until Movant knocked Victim unconscious. The evidence therefore clearly contradicts Movant's

14

self-defense claim. Given the overwhelming evidence of guilt, any alleged portions of the incident that did not take place in Victim's cell were already sufficiently captured by video surveillance, making any observations by the witnesses cumulative.

Movant failed to allege sufficient facts, not refuted by the record, showing trial counsel was ineffective for failing to contact or call the alleged witnesses or the alleged failure would have created a reasonable probability of a different outcome at trial. Therefore, the motion court did not clearly err in denying Movant's claim without an evidentiary hearing. Point III is denied.

<u>Section 600.063 RSMo 2000[5]</u>

In his fourth and final point, Movant argues the motion court clearly erred in denying, without an evidentiary hearing, his Rule 29.15 claim that trial counsel was ineffective for failing to request a caseload conference under Section 600.063. Movant asserts he adequately pled facts, not conclusions, showing trial counsel's lack of time to prepare for trial prejudiced him. We disagree.

Here, trial counsel entered his appearance in November 2017, and on January 8, 2018, filed a motion for continuance "on the grounds that counsel is not ready for trial and does not believe he could effectively represent Movant." During the pretrial hearing on his motion for continuance, trial counsel noted, *inter alia*, that "[he] currently ha[d] over 200 pending cases in [his] office," he had conducted a jury trial the previous week, and his time was "very limited." The trial court denied the motion for continuance and trial proceeded on January 16, 2018, as scheduled.

In his amended motion, Movant alleged that in seeking to have the trial continued, trial counsel made clear to the court that he had not had time to prepare, he had not adequately

---

[5] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

reviewed all the discovery, contacted the witnesses, or met with Movant. Therefore, Movant argues, trial counsel was ineffective in seeking a continuance "by not also seeking [a] Section 600.063 motion."

In denying this claim, the motion court found that Section 600.063:

permits a district defender "upon approval by the director or commission" to file a motion with the presiding judge arguing that an individual defender is unable to provide effective assistance of counsel due to caseload concerns. Trial counsel was an assistant public defender, not the district defender, and Movant does not allege that the district defender or commission had authorized the filing of such a motion. It is wholly speculative whether pursuing relief under this statute would have provided relief for Movant, and the statute itself specifically provides that no provisions of this section [are] to be construed as providing a basis for a claim for post-conviction relief by a Movant.

The motion court's findings of fact and conclusions of law are not clearly erroneous.

Section 600.063.5 provides that "[n]othing in this section shall . . . be construed as providing a basis for a claim for post-conviction relief by a defendant." Thus, the plain language of the statute precludes it from being used as the basis for a claim of post-conviction relief, such as Movant's claim that counsel was ineffective for failing to seek a caseload conference under Section 600.063. Because Section 600.063.5 specifically precludes the type of claim that Movant is here pursuing, namely that trial counsel was ineffective for failing to request a caseload conference, the motion court did not clearly err in denying Movant's claim without an evidentiary hearing.

Additionally, even if not precluded, Movant's amended motion failed to allege sufficient facts to warrant relief. Section 600.063 provides: "Upon approval by the director or the commission, any district defender may file a motion to request a conference to discuss caseload issues involving any individual public defender . . . with the presiding judge of any circuit court served by the district office." Section 600.063.1. Here again, the plain language of the statute

16

guides us. It authorizes only a district defender, rather than an assistant public defender, to file such a motion, and only upon approval by the director or the commission. The amended motion failed to allege that reasonable efforts by trial counsel would have resulted in obtaining approval from the director or the commission for the filing of such a motion and that the district defender would have filed the motion.

Finally, Movant's amended motion failed to show he was prejudiced by counsel's alleged failure to seek a caseload conference. Movant's amended motion merely alleged he was "prejudiced" because "[h]ad such a motion been filed, at the very least there would have been an opportunity to request the presiding judge stay the prosecution of the case, or continue the trial altogether." Because Movant's amended motion did not allege any facts showing a different outcome on the motion's ruling or of the trial itself, the motion court did not clearly err in denying this claim and in concluding it was "wholly speculative" that pursuing relief under Section 600.063 would have provided Movant relief. Point IV is denied.

### Conclusion

The Judgment is affirmed.

_Sherri B. Sullivan_
_____
SHERRI B. SULLIVAN, C.J.

Philip M. Hess, J., concurs;
Gary M. Gaertner, Jr., J., concurs in separate opinion.

17



# In the Missouri Court of Appeals
# Eastern District

| | | |
|---|---|---|
| DARWIN D. STEVENSON, | ) | No. ED109610 |
| | ) | |
| Movant/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1922-CC10833 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable David L. Dowd |
| | ) | |
| Respondent. | ) | FILED:  March 29, 2022 |

## Concurring Opinion

I respectfully concur because the majority opinion correctly finds the Movant's amended petition deficient.  Moreover, even if the amended petition was not deficient, no prejudice resulted from any potential ineffectiveness.  But with regards to Point I, I have serious concerns that defense counsel's failure to subpoena Officer Perkins' Garrity[1] statement, to depose Officer Perkins, or at the very least to interview Officer Perkins crossed into ineffectiveness.  Movant's theory of defense at trial was that Victim was the initial aggressor, which Movant suggested Officer Perkins could corroborate.  In light of this theory, defense counsel should have taken steps to obtain Officer Perkins' account.

Here, the State informed the defense of the existence of Officer Perkins' Garrity statement, but, once the State determined it did not intend to call Officer Perkins as a witness at trial, the State did not disclose the contents of the statement to the defense.  Although it is not clear from the record whether either

---

[1] Garrity v. New Jersey, 385 U.S. 493, 500 (1967) (holding that when public employee's statement is compelled by threat of termination, it is unconstitutional to use statement in later prosecution of that employee).

the State or the defense had seen the content of Officer Perkins' Garrity statement, both parties should have been aware of the possibility that the statement could contain exculpatory or impeaching evidence subject to disclosure under Rule 25.03 and Brady v. Maryland, 373 U.S. 493 (1963). When the State failed to turn over Officer Perkins' Garrity statement, defense counsel could have and should have moved: (1) under Rule 25.04(a) for the trial court to order the State to disclose the statement; or (2) under Rule 25.04(c) for the trial court to issue a subpoena to the relevant government entity to make the statement available to the State for disclosure to the defense, if the State was not in possession of the full Garrity statement.

Nevertheless, even if Officer Perkins' Garrity statement did in fact corroborate Movant's defense, the overwhelming evidence presented at trial clearly established Movant's guilt. Movant's defense was undercut by his own trial admissions of his intent to fight Victim, following Victim to his cell, and swinging first at Victim, foreclosing any "reasonable probability" of a different trial result. See Taylor v. State, 382 S.W.3d 78, 81 (Mo. banc 2012) (where there is overwhelming evidence of movant's guilt presented at trial, movant cannot establish by reasonable probability that result of trial would have been different but for counsel's alleged errors).

_____
Gary M. Gaertner, Jr., J